UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CITY OF GARY, INDIANA, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>CITY OF LAKE STATION, INDIANA, *et al.*, )<br>)<br>Defendants. ) | CAUSE NO. 2:16-CV-512-PPS-AZ<br>2:25-CV-21 |

## OPINION AND ORDER

This is a declaratory judgment action brought by the City of Gary and the Gary Sanitary District (collectively, the "Gary Entities"), seeking a declaration that a prior Consent Decree entered by this Court in 2018 authorizes the Gary Entities to raise rates on three of its customer communities—the defendants City of Lake Station, the City of Hobart, and the Merrillville Conservancy District ("MCD")—none of whom were parties to the Consent Decree. (For ease of reference, I will refer to the defendants collectively as the "Customer Defendants"). The Customer Defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6) [DE 85], claiming that any decision relating to rates is a matter for the Indiana Utility Regulatory Commission ("IURC"). They further argue in a Supplemental Motion to Dismiss [DE 94] that after the first motion to dismiss was briefed, the Gary Entities unilaterally decided to adopt and charge the new rate structure thus mooting the declaratory action. In summary, although the matter is not moot, the motion to dismiss must be granted because the Consent Decree does not provide a basis for the Court to exercise jurisdiction over the

Customer Defendants. Consequently, the Supplemental Motion to Dismiss [DE 94] will be denied, but the original motion to dismiss [DE 85] will be granted.

## Background

Most facts in this case are undisputed. But that doesn't mean this controversy isn't complicated. I held an in person hearing on this matter on January 20, 2026, at which time the parties elucidated the background of this case and set forth applicable (and helpful) arguments.

The Clean Water Act mandates that publicly owned treatment works ("POTWs") like Gary Sanitary District ("GSD") implement a user charge system that ensures each recipient of wastewater treatment services pays its proportionate share of the costs of operation, maintenance, and replacement. *See* 33 U.S.C. § 1284(b)(1); 40 C.F.R. § 35.2140; Amend. Compl., DE 83, ¶¶ 37, 38. This system must be designed to generate sufficient revenue to support the full cost of service, based on each user's proportional share of all costs of treating their wastewater, including the types of infrastructure costs contemplated by the Consent Decree. *Id.*

Back in March 2018, I signed a Consent Decree in *United States of America and the State of Indiana. v. The City of Gary, Indiana, and Gary Sanitary District.*, Case No. 2:16-cv-512. [Amend. Compl. Ex. A, DE 83-1.] The Consent Decree resolved allegations by the United States and State of Indiana that the Gary Entities violated the Clean Water Act and state environmental laws. [Amend. Compl. ¶ 7; DE 83-1.] It also imposed substantial obligations on the Gary Entities to implement capital improvements and

2

operational upgrades to address sewer overflows and other alleged violations.  The Consent Decree requires the Gary Entities to, among other things, "provide sufficient funding to meet the terms and requirements of [the Consent Decree], the 2012 NPDES Permit and any successor NPDES permit, and all applicable provisions of the CWA and State law." [Amend. Compl. ¶¶ 32-33; Ex. A ¶ 13(a).]  If the Gary Entities are unable to meet the requirements of the Consent Decree due to insufficient funding, then they are required to obtain sufficient funding either by acting to "increase the amounts charged to…users…including the [Customer Defendants,] or enact/raise any other fee or increase/levy any taxes otherwise available to [the Gary Entities] no later than 120 days after certifying that funding is inadequate…" [Amend. Compl. ¶¶ 34-35; Ex. A ¶¶ 13(a)-(b).]  Notably, the Consent Decree contains no provisions explaining what specific rates the GSD should charge to users or directing the GSD to elect one form of available means to fund its obligations under the Consent Decree over any other. [Ex. A.]

As noted above, neither Lake Station, nor Hobart, nor the MCD are parties to the Consent Decree. [Amend. Compl. ¶¶ 17-19; Ex. A ¶ 9 (defining the "parties" to the Consent Decree as the United States on behalf of the EPA, the State of Indiana (on behalf of IDEM), Gary, and the GSD).]  What's more, the Consent Decree is explicit that its terms are only binding on the parties named in the agreement. *See* Ex. A ¶ 4.  By contrast, this case flips the Gary Entities to the plaintiff side of the "v" and adds the three Customers Communities, who were strangers to the Consent Decree, as the defendants.

Let's look at the terms of the Consent Decree, as they are crucial to this dispute. Although this Court retained jurisdiction to enforce the Consent Decree, it is limited to "the purpose of resolving disputes arising under this Decree or entering an order modifying this Decree , . . . or effectuating or enforcing compliance with the terms of this Decree." [*Id.* ¶ 36; Ex. A, ¶ 115.]  The Consent Decree specifically envisions continued compliance with state and federal laws, and it does not excuse Gary's responsibility "for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits…" [Ex. A, ¶ 109.]  The Consent Decree also "does not limit or affect the rights of [the Gary Entities, the United States, or the State of Indiana] against any third parties, not party to [the Consent Decree,] nor does it limit the rights of third parties, not party to [the Consent Decree,] against [the Gary Entities,] except as otherwise provided by law." *Id.* ¶ 110.  The Consent Decree also provides that it "shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Decree." *Id.* ¶ 112.

Before diving into the details of this dispute, it's necessary to step back for a moment and look at the big picture.  GSD provides wholesale wastewater treatment services to the Customer Defendants under long-standing agreements.  The Lake Station Agreement was executed in 1982 and amended in 1984.  Although it expired in 2002, it has continued under an implied-in-fact arrangement. ("Lake Station Agreement"). [Amend. Compl. ¶¶ 22-24.]  The Hobart and MCD Agreements, executed

4

in 1984 and 1995 respectively (with subsequent amendments), remain in effect. *Id.* ¶¶ 25, 28.

The Gary Entities claim that each of these agreements (collectively, the Wastewater Treatment Agreements) employs a rate methodology that is outdated and inadequate to meet the financial obligations imposed by the Consent Decree. [DE 88 at 4.] They tell me that the existing agreements—where rates are based on flow volume and constituent strength, with an annual financial review (called a "true-up" process)—frequently results in protracted negotiations to settle up deficits from the previous year. [Amend. Compl. Exs. C, D, E.] Indeed, both the Hobart and MCD Agreements state "that if either party believes the effect of this Agreement in any way is inequitable or unfair to its citizens such a party may . . . request re-negotiation of any part of this Agreement, and the other party will in good faith participate in such negotiations." [Amend. Compl. ¶¶ 27, 29; Ex. D. § 14(A); Ex. E § 14(A).] Both Agreements also expressly require the parties to comply with all applicable state and federal laws. [*Id.*, Ex. D. § 4; Ex. E § 4.]

Because GSD thought the existing rate structures were inadequate, it initiated efforts to renegotiate the agreements. As the GSD attorneys told me during the hearing, the citizens of Gary are unfairly paying more for their wastewater treatment than the citizens of the Customer Defendants: Hobart, Merrillville, and Lake Station. To remedy that situation, GSD issued several notices, terminating the implied in fact contract that it has with Lake Station and telling Lake Station it would continue to provide services on

5

an interim basis at a rate of "4.50/1,000 gallons" (a substantially higher interim rate) until a new agreement could be reached. [Amend. Compl. ¶ 44.] GSD also invited the other Customer Defendants to meet and negotiate new or revised agreements to reflect equitable cost-sharing. *Id.* ¶ 45.

These efforts have largely been rebuffed, with the Customer Defendants telling GSD that the existing agreements are not inequitable to the citizens of Gary. *Id.* ¶ 48; Ex. J. Nevertheless, the Customer Defendants stated in a letter dated November 15, 2024, that they were "open to negotiating a rate increase in a fair and equitable manner that appropriately accounts for cost causation and which incorporates legal and industry standard rate-making principles." [DE 83-2 at 14.] The Customer Defendants also proposed some new rates, but according to the Gary Entities, the proposed rates still fall short of what they needed to meet the financial obligations of the Consent Decree. [Amend. Compl. Ex. J; DE 88 at 6.]

Instead of agreeing to the new proposed rate (as the Customer Defendants were hoping), and because the GSD allegedly did not respond to the November 15, 2024 letter, the Customer Defendants filed a joint petition with the IURC on November 26, 2024, under Indiana Code § 8-1-2-61.7. [Amend. Compl. ¶ 50.] In that petition, the Customer Defendants sought review of GSD's wholesale sewage service rates. *Id.* In their petition, they also challenged the Interim Rate offered to Lake Station and claimed it was substantially higher than the charges they believed were owed under the most recent true-up report. *Id.* ¶¶ 51-52. According to the Customer Defendants, they "do

6

not challenge the GSD's ability or need to raise rates, only the amount to which they should be raised." [DE 86 at 3.] And they believe "[t]he IURC is the proper forum to consider and resolve that question." *Id.*

During the hearing before me, the parties explained that in general, the wastewater utility of Lake Station, Hobart, the Merrillville Conservancy, and the GSD, are not under the jurisdiction of the IURC. However, all parties agree that Indiana Code § 8-1-2-61.7 provides the mechanism for review of wholesale sewage rates in this instance, and requires the utility that provides wholesale sewage service (in this case GSD) to prove its proposed rates and charges are "just and reasonable." Indiana Code § 8-1-2-61.7(d)(1). In the IURC Proceeding, the Customer Defendants reiterated their agreement to increase rates to fund the Consent Decree, but invoked the IURC's limited jurisdiction under Indiana Code § 8-1-2-61.7 to consider whether rates higher than those proposed by the Customer Defendants were supported and thus warranted under Indiana law. [Amend. Compl., Ex. B, p. 1, p. 6-7 at ¶ 20.]

In their memorandum in support of the motion to dismiss [DE 86 at 7], Defendants state after the IURC Proceeding was filed, GSD filed a motion to stay or dismiss it, asserting *inter alia*, that the IURC Proceeding was a collateral attack on the Consent Decree [IURC Proceeding, Docket No. 4616, dated January 15, 2025], and then the IURC Proceeding was stayed by agreement of the GSD and Customer Defendants pending resolution of this case. [*Id.*, Docket No. 46168, order dated February 27, 2025.] These rulings have not been attached as exhibits; but the Customer Defendants request

7

the Court take judicial notice of them under Federal Rule of Evidence 201(b). [DE 86 at n.2.] The Gary Entities have not addressed the IURC rulings at all in their memoranda. Given the Court's inability to verify this information, it will be given no weight, but is included in this order just as part of the general procedural background of the case.

After filing the complaint in this case, the Gary Entities allege they conducted a wastewater cost of service/rate study to develop new rates (or a New Rate Structure). [Amend. Compl. ¶ 54.] Thereafter, the Court granted the Gary Entities' request for leave to amend the complaint to assert allegations regarding the New Rate Structure, and an amended complaint was filed on June 27, 2025. [DE 83.] Plaintiffs claim the new rate structure represents the Customer Defendants' fair share of the costs to operate and maintain the sewer system and implement Consent Decree projects through December 31, 2027. *Id.* ¶ 58.

At bottom, this is a dispute about what rates an Indiana utility should be able to charge its Indiana customers for the treatment of wastewater. Indeed, Plaintiffs allege there is an existing dispute between the Gary Entities and the Customer Defendants because the rate methodology set forth in the Hobart Agreement and the MCD Agreement, and the rates proposed by the Customer Defendants in the Joint Offer Letter, are "insufficient" to cover the Customer Defendants' fair share of the GSD's operation, maintenance, and capital costs. [Amend. Compl. at 12.] But the only federal hook is a reference to the Consent Decree and an oblique reference to the Clean Water Act. *Id.* at 13.

8

This is an action brought under the Declaratory Judgment Act, 28 U.S.C. § 2201. But the "declarations" the Gary Entities seek are rather extraordinary: 1) a judgment from this Court that the Consent Decree requires the GSD to raise rates on all users, including the Customer Defendants; 2) that the Hobart Agreement and the MCD Agreement are void; and 3) that its proposed "New Rate Structure" represents the Customer Defendants' "fair share" of the costs necessary for the Gary Entities to comply with the Consent Decree and the law. [Amend. Compl. at 13.]  In other words, instead of defending the proposed rate increase before the IURC, the Gary Entities seek in part to turn this Court into a venue for rate making.

After the Customer Defendants filed this motion to dismiss, which was fully briefed on July 31, 2025, the Gary Entities purported to unilaterally adopt the New Rate Structure.  On August 15, 2025, the GSD Board of Commissioners unanimously voted to approve Resolution NO. SD25-25, "Approving and Establishing Wastewater Treatment Fees for Contract Communities." [Ex. 1 to Motion for Leave, DE 74-1.] As the parties covered during the hearing, the new rate is being charged by the GSD; however, the Customer Defendants have balked and are refusing to pay the increased rate at this time.  Because the Gary Entities determined they did not require approval from the Court to increase the Customer Defendants' rates (despite having originally filed this lawsuit seeking such approval), the Customer Defendants filed a supplemental motion to dismiss [DE 94], positing in addition to their original arguments, the case should also be dismissed because the controversy is now moot.

9

**Discussion**

Defendants have moved to dismiss the amended complaint under both Federal Rule of Civil Procedure Rules 12(b)(1) and (6).  In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements.  *See Iqbal*, 556 U.S. at 678.  Plaintiffs must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  Finally, "a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) 'tests the sufficiency of the complaint, not the merits of the case.'"  *Tarzian v. Kraft Heinz Foods Co.*, No. 18 C 7148, 2019 WL 5064732, at *2 (N.D. Ill. Oct. 9, 2019) (quoting *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012)).

When evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), I must use the same "plausibility" standard; therefore, I must accept alleged factual matters as true and draw all reasonable inferences in favor of Plaintiff.  *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015).  Plaintiffs bear the burden of establishing the

jurisdictional requirements. *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). "Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." *Illinois v. Chicago*, 137 F.3d 474, 478 (7th Cir. 1998).

A consent decree is essentially a contract between parties to litigation which becomes a judgment of the court. *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002). Importantly, if the Gary Entities believed that matters had materially changed since the Decree was entered into, they could have attempted to reopen the Decree and seek a modification of it from this Court. The Supreme Court has made it clear that "district courts should apply a flexible standard to the modification of consent decrees when a significant change in facts or law warrants their amendment." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004) (internal quotations and citations omitted); *see also Shakman v. City of Chicago*, 426 F.3d 925, 934 (7th Cir. 2005). But for reasons that are not clear, the Gary Entities have eschewed this approach.

Instead, the Gary Entities have filed this declaratory judgment action asking me to simply declare that they can raise rates and in what amount. No thanks. While I do think there is a justiciable controversy and the issues in this case are not moot (GSD is charging an increased rate, but the Customer Defendants are refusing to pay that rate), it is also very clear that this Court does not have jurisdiction to enter a declaratory judgment against the Customer Defendants on the issues requested by the Gary Entities.

First, a court cannot "enter a consent decree that imposes obligations on a party that did not consent to the decree." *Local No. 93, Intern. Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986); s*ee also Antrim Mining, Inc. v. Davis*, 775 F. Supp. 165, 168 (M.D. Pa. 1991) (citing *Martin v. Wilks*, 490 U.S. 755, 768 (1989) (abrogated on other grounds) ("consent decrees can bind only parties, and, moreover, can bind only those parties who have agreed to the consent decree."). Yet, essentially, that is what the Gary Entities ask me to do in this lawsuit—impose obligations on the Customer Defendants pursuant to my authority overseeing the Consent Decree, even though they were strangers to the Decree.

What's more, the Consent Decree itself does not contemplate this kind of action. The Decree specifically provides it "does not limit or affect the rights of [the Gary Entities, the United States, or the State of Indiana] against any third parties, not party to [the Consent Decree,] nor does it limit the rights of third parties, not party to [the Consent Decree,] against [the Gary Entities,] except as otherwise provided by law." [Amend. Compl., Ex. A, ¶ 110.] In other words, the Gary entities cannot now bring into court third parties to the Consent Decree—the Customer Defendants—arguing they are interfering with this Consent Decree, because they aren't even parties to it.

It is true that I retained jurisdiction to resolve "disputes arising under the Decree." *Id.* ¶ 115. But nothing in the Decree specifies what rates should be charged for different communities, or anticipates that this Court would decide the propriety of certain increases for wastewater treatment rates for different communities. And indeed,

12

I never would have signed off on an agreement whereby I would have been relegated to rate setter for the Gary Sanitary District. This Court is ill-equipped to determine whether the intricacies of the New Rate Structure meet the requirements of the Consent Decree, as well as state and federal law. And in all events, the Consent Decree specifically places the responsibility on the Gary Entities to "provide sufficient funding" to meet the terms of the Decree, including increasing "the amounts charged to . . . the contract communities." [Amend. Compl. Ex. A, at 13-14.] In short, the Consent Decree doesn't say boo about the Court policing the rates that the Gary Entities charge, all of which means this dispute isn't "arising under the Decree."

This doesn't mean the Gary Entities are without a remedy. It's just a matter of who decides. And it seems plain to me the IURC is the *exact* governing body to decide such issues. This is shown by the fact that the statute affording review requires the utility that provides the wholesale sewage service (GSD in this case) to prove its proposed rates and charges are "just and reasonable." Indiana Code § 8-1-2-61.7(d)(1). Isn't that what everyone is trying to accomplish here? The GSD needs to be able to have enough money to comply with the upgrades required by the Consent Decree and the CWA, and the technique to implement this is to raise wastewater treatment rates on the communities in a way that is equitable to each community, so that each is paying its fair share. The Consent Decree contemplates that the IURC is the right vehicle for such a dispute, as it specifically provides that the Gary entities must continue to comply with all applicable federal and state laws. [Amend. Compl. Ex. A, ¶ 109.]

In sum, the present dispute over what is a fair rate to charge the Customer Defendants is not a "dispute arising under" the Consent Decree. *Id.* at ¶ 115. Instead, it is the type of dispute that was consciously and specifically excluded from the terms of the Decree. It cannot form the basis for me to exercise jurisdiction over this case.

Nor does the Declaratory Judgment Act itself supply the necessary jurisdiction. The Act only allows a federal court to hear "a case of actual controversy within its jurisdiction . . . ." 28 U.S.C. § 2201. This means "[t]o the extent Plaintiff seeks to establish federal question jurisdiction under the federal [Act, it] cannot do so without alleging an independent source of subject-matter jurisdiction." *Curtis v. Illinois*, No. 1:23-cv-79-HAB-SLC, 2023 WL 4239185, at *2 (N.D. Ind. June 2023) (citing *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 935 (7th Cir. 2008)); *see also Round to Fit, LLC v. Reimer*, 380 F.Supp.3d 830, 835 (S.D. Ind. 2019) (confirming the declaratory judgment act only provides a remedy if the court has jurisdiction from another source).

Here, the amended complaint fails to allege any independent source of jurisdiction. It merely alleges the Defendants are "within the jurisdiction of this Court and are attempting to take action that would necessarily interfere with the implementation of a federal Consent Decree issued by this Court." [Amend. Compl., ¶ 20.] But as already established, even if the Customer Defendants' are acting inconsistent with the terms of the Consent Decree (and defendants claim they are not), the Consent Decree does not provide jurisdiction for this Court to hear this dispute.

The Gary Entities' argument to the contrary relies almost exclusively on a Sixth Circuit case, *United States v. City of Loveland, Ohio*, 621 F.3d 465 (6th Cir. 2010). In *Loveland*, the district court entered a judgment on the pleadings that enjoined the City of Loveland from withdrawing from the Metropolitan Sewer District of Great Cincinnati (MSD). Here's what happened: in 1970, Loveland (a suburb of Cincinnati) put into operation its Polk Run wastewater treatment plant and sewer system which provided services to residents in three counties, including Hamilton County. *Id.* at 467. In 1985, the City of Loveland and Board of County Commissioners of Hamilton County entered into an agreement by which the Board, through a separate agreement with the Metropolitan Sewer District of Greater Cincinnati ("MSD") would "maintain, repair and operate" the Polk Run System. *Id.* However, Loveland continued to own the existing facilities and improvements constituting the Polk Run System as of the execution date of the 1985 Agreement. *Id.* Pursuant to the 1985 Agreement, the rates to be billed would be established by the Board, which could be modified by the Board from time to time, and the sewer rates would be uniform through the service area of the MSD. *Id.* at 468. In 2002, the EPA sued the Board and the City of Cincinnati for violations of the CWA. *Id.* They eventually entered a consent decree which required the Board and City of Cincinnati to address capacity and pollution problems with the MSD-operated sewer system (which included the Polk Run Segment), by implementing infrastructure improvements through the year 2022. As a consequence of the consent decree, new obligations were imposed on the MSD-operated sewer system that resulted in higher

15

rates for all users, including the residents of Loveland, whose sewer system had previously been operated by the Board pursuant to the 1985 Agreement. Under the consent decree, the district court retained jurisdiction to enforce the terms and conditions and achieve the objectives of the consent decree, and to resolve disputes arising under it. *Id.* In October 2009, Loveland sent a notice to the Board indicating it wanted to terminate the 1985 Agreement, and resume its independent operation of the Polk Run System. Loveland also filed suit in Claremont County, seeking a declaratory judgment, arguing Loveland's increased rates disproportionately overcharged Loveland customers because the cost of improvements for the Polk Run Segment were substantially less than the cost of improvements needed for the other sewer systems in the MSD. *Id.* at 468-69. In response, the Board filed the district court action seeking a declaratory judgment that Loveland could not unilaterally terminate the 1985 Agreement and thereby acquire control over the MSD Polk Run Segment. *Id.* at 469.

Loveland moved to dismiss the Board's complaint for lack of subject matter jurisdiction, arguing it was not a party to the consent decree and there was no federal question but only a contract dispute under Ohio law. *Id.* The district court denied the motion to dismiss, ruling it possessed subject-matter jurisdiction under 18 U.S.C. ¶ 1331, holding "Loveland's current efforts to modify its relationship with MSD is directly related to its concerns about the implementation of the Consent Decrees." *Id.* The Sixth Circuit affirmed and found the federal court had jurisdiction under section 1331 because the dispute directly implicated enforcement of a federal consent decree. *Id.* at 473. In

16

rejecting the City of Loveland's argument, the Court explained that the declaratory judgment complaint at issue "neither ask[ed] the court to interpret the terms of the contract nor allege[d] a violation of a state statute . . . it involve[d] more than simply the economic consequence of the consent decree on non-parties; it involve[d] the attempted removal of property, the Polk Run [System,] from the consent decree obligations." *Id.* at 471. The *Loveland* court concluded this necessarily raised a disputed federal issue—whether the consent decree requiring upgrades to the Polk Run System could be modified by removal of that portion of the system from the MCD sewer system (which was otherwise covered by the consent decree). *Id.*

It seems the reason the Sixth Circuit found subject matter jurisdiction over a non-party to the consent decree was that the non-party, the City of Loveland, was trying to take action that directly conflicted with, and would have the result of changing the terms of, the federal consent decree. This case is different because the Customer Defendants are not alleged to have attempted to remove property from the scope of the Consent Decree, or taken any action which would alter or affect the terms of the consent decree. While defendants have taken issue with the amount of the proposed increase of rates, they simply seek a review of the *amount* of the New Rate Structure by the IURC. Thus, the situation is quite different than the one presented in *Loveland*.

Finally, it is notable that *Loveland* distinguished the case of *City of Warren v. City of Detroit*, 495 F.3d 282 (6th Cir. 2007), which is actually a case much more similar to the instant facts. *Loveland*, 621 F.3d at 473. Warren filed a complaint in state court alleging

17

that Detroit (which provided Warren's water), breached its contractual obligation to charge reasonable rates by raising rates to pay for costs associated with obligations assumed in a consent decree with the EPA. *Id.* at 284. Detroit removed the case, arguing Warren's action arose under the judgments and orders entered pursuant to the CWA, and Warren then moved to remand. The *Warren* court concluded there was no substantial federal question jurisdiction because "Warren's contract claim alleges that Detroit has included certain costs in the water rates that are not reasonable, as required by the contract" and "Warren's statutory claim alleges that Detroit has included in the actual costs of service as determined under the utility basis of rate-making, as required by Michigan statute." *Id*. at 287. "Neither of these claims raises a question of federal law because the consent judgments entered in the EPA case lack the power to supersede Warren's contractual rights or the Michigan statute." *Id.* If anything, our case is a much closer match with *Warren* than it is with *Loveland* because this case also only involves the reasonableness of sewage rates, not whether certain property can be removed from the purview of a consent decree.

Because I am dismissing this case for lack of jurisdiction, this necessitates dismissing the claims without prejudice. *See Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018) ("A suit dismissed for lack of jurisdiction cannot *also* be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render.") (emphasis in original); *see also Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 535 (7th Cir. 2011) (stating jurisdictional dismissal under Rule 12(b)(1) is without prejudice).

**Conclusion**

For all of these reasons, Defendants' Motion to Dismiss for Lack of Jurisdiction [DE 85] is GRANTED and the complaint is DISMISSED WITHOUT PREJUDICE.

ENTERED: February 12, 2026.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
